UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: LOGISTICS INFORMATION SYSTEMS, INC., | ) ) | |
| Debtor. | ) ) | Civil Action No. 09-40117-GAO |
| LOGISTICS INFORMATION SYSTEMS, INC. and ARCLOGIX, INC., | ) ) ) | (Chapter 7 Case No. 03-10886-JBR |
| Appellants, | ) ) | |
| v. | ) ) | |
| JOSEPH BRAUNSTEIN, CHAPTER 7 TRUSTEE OF LOGISTICS INFORMATION SYSTEMS, INC., | ) ) ) | Adv. Proc. No. 04-1188) |
| Appellees. | ) ) | |

| | | |
|---|---|---|
| In re: LOGISTICS INFORMATION SYSTEMS, INC., | ) ) | |
| Debtor. | ) ) | Civil Action No. 09-40118-GAO |
| WILLIAM E. SPERBECK and ARCLOGIX, INC., | ) ) | (Chapter 7 Case No. 03-10886-JBR |
| Appellants, | ) ) | |
| v. | ) ) | |
| JOSEPH BRAUNSTEIN, CHAPTER 7 TRUSTEE OF LOGISTICS INFORMATION SYSTEMS, INC., | ) ) ) | Adv. Proc. No. 04-1188) |
| Appellees. | ) ) | |

OPINION AND ORDER
March 31, 2010

O'TOOLE, D.J.

      The appellants, Logistics Information Systems, Inc. ("Logistics"), William Sperbeck, and Arclogix, Inc. ("Arclogix"), appeal from a final judgment and a final order of the Bankruptcy Court for the District of Massachusetts in favor of the appellee, the Chapter 7 Trustee of

Logistics, Joseph Braunstein. The bankruptcy court held that asset transfers made by Logistics to or for the benefit of Arclogix were fraudulent conveyances. It also ordered Arclogix to be substantively consolidated with Logistics. After consideration of the parties' briefs, the bankruptcy court's judgment and order are affirmed.

**I.      Background**

Sperbeck founded Logistics in 1994. Sperbeck was Logistics' sole shareholder and president. Logistics designed and licensed transportation management software, which allowed shippers to monitor and manage the transportation of their goods by private carriers. Two of its popular software products were "MaxPayload" and "Audit-Logic."

In August 1999, Logistics sued one of its customers, American President Business Logistics Services, Ltd. ("APBLS"), in the Middlesex Superior Court, claiming APBLS had violated Logistics' software licensing agreement. APBLS counterclaimed, alleging that Logistics had misrepresented the capabilities of its software. In September 2000, APBLS and Logistics engaged in an unsuccessful mediation of the claims. Ultimately, in December 2001, APBLS obtained a default judgment in the amount of $1.5 million against Logistics.

On September 13, 2000, Sperbeck formed Arclogix to conduct business substantially similar to Logistics'. Arclogix utilized software that was also similar to Logistics' except that it was web-based and had improved functionality. Arclogix started active operations in January 2001; Logistics ceased operations at about the same time.

Between December 2000 and August 2001, when Sperbeck claims he was winding down the company, Logistics paid Sperbeck $254,163.50. According to Sperbeck, this represented the repayment of loans. Sperbeck then invested this money back into Arclogix. On June 13, 2001, Arclogix purchased certain assets of Logistics, essentially office equipment, for about $30,000,

the tax value of the assets. Logistics then paid that money to Sperbeck. On February 3, 2003, faced with a $1.5 million judgment and having transferred all its assets, Logistics filed a Chapter 7 bankruptcy petition.

Arclogix was like Logistics in almost every way. At start-up, it had the same employees as Logistics and used the same telephone number. The companies' balance sheets were nearly identical. Although Arclogix did not begin operations until January 2001, its balance sheet dated December 31, 2000, reflected accounts receivable of $200,201.00 and computer software expense of $559,938—the same amounts as appeared on Logistics' December 31, 2000 balance sheet.

For all intents and purposes, Arclogix acted as if it were a mere continuation of Logistics. On its website, Arclogix identified itself as "formerly known as Logistics." Arclogix entered into a number of maintenance contracts with Logistics' clients that incorporated earlier multi-decade license agreements between Logistics and the clients, even though Logistics never formally assigned its rights under these license and maintenance contracts to Arclogix. Further, Arclogix maintained and advertised the Logistics software AuditLogic and MaxPayload, without Logistics having actually transferred these trademarks to Arclogix.

On June 8, 2004, the bankruptcy trustee, Braunstein, filed an adversary proceeding on behalf of the estate against Logistics, Sperbeck, and Arclogix, alleging that there had been fraudulent conveyances under state law. He asserted claims for turnover under bankruptcy law, successor liability, usurpation of corporate opportunity, piercing of the corporate veil, and to reach and apply assets held by Sperbeck and Arclogix. He also filed a motion to substantively consolidate the non-debtor Arclogix with the debtor Logistics.

Trial before the bankruptcy court took place in October 2008. Sperbeck testified that he had formed Arclogix to give employees stock in the new corporation and because the Logistics' software programming language was outdated. He asserted that he did not consider APBLS to be a creditor and had not formed Arclogix in order to prevent APBLS from recovering on a sizable judgment against Logistics. Sperbeck also claimed that he had regularly made loans to Logistics, and that the money he withdrew was simply a repayment of his loans.

The bankruptcy court found in favor of Braunstein and ordered the substantive consolidation of Arclogix and Logistics. The court stated specifically that it found Sperbeck to be "not convincing or credible." Braunstein v. Sperbeck (In re Logistics Info. Sys., Inc.), Adv. Pro. No. 04-1188, 2009 WL 722023, at *1 (Bankr. D. Mass. Mar. 18, 2009). It found his explanation of the formation of Arclogix to be "superficial and lacking in substance," and his demeanor to be "suggestive of less than forthright answers." Id. The bankruptcy court also stated that it was "not satisfied that the original [Sperbeck-Logistics] loans and opening balance thereof was ever proved." Id. at *6.

The court found the following to be fraudulent conveyances under Massachusetts General Laws chapter 109A, § 5 and therefore part of Logistics' estate: (1) Logistics' transfer of assets to Arclogix; (2) Logistics' payments to Sperbeck made between December 11, 2000 and June 18, 2001; (3) funds in an account designated as the "Wellesley Bank Account;" and (4) the $213,000 Sperbeck used to capitalize Arclogix. It also ruled that Logistics and Arclogix should be substantively consolidated since it would be nearly impossible to disentangle the transfers.

## II. Discussion

This Court reviews the bankruptcy court's conclusions of law *de novo* and its findings of facts pursuant to a clearly erroneous standard. Bushay v. McDonnell (In re Bushay), 327 B.R.

695, 701 (B.A.P. 1st Cir. 2005); In re High Voltage Eng'g Corp., 403 B.R. 163, 166 (D. Mass. 2009). Mixed questions of law and fact are reviewed under a clearly erroneous standard unless the bankruptcy court's decision was based on a mistaken view of the law. Arch Wireless, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F.3d 76, 82 n.2 (1st Cir. 2008).

> A. Did the Bankruptcy Court Err in Finding That the Appellants Made Fraudulent Transfers Under Massachusetts General Laws chapter 109A, § 5?

The bankruptcy court's finding that the appellants' transfers were fraudulent is one of fact, based on trial evidence and judgments about the credibility of witnesses. It will only be set aside if clearly erroneous. In re High Voltage Eng'g Corp., 403 B.R. at 166. Even greater deference is accorded to the trial court's factual determinations when they are based on the credibility of witnesses. Rodriguez-Morales v. Veterans Admin., 931 F.2d 980, 982 (1st Cir. 1991).

The Massachusetts Uniform Fraudulent Transfer Act, Mass. Gen. Laws ch. 109A, § 5(a), provides that a fraudulent transfer takes place when:

> whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, . . . the debtor made the transfer or incurred the obligation:
>     (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>     (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>         (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>         (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

"Actual intent" is generally proven "circumstantially and inferentially." Rodriguez v. Montalvo, 371 F. Supp. 2d 3, 5 (D. Mass. 2005) (internal quotation omitted). The statute enumerates factors

a court may consider in determining whether the intent to hinder or defraud a creditor is present. A court may consider whether:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mass. Gen. Laws ch. 109A, § 5(b).

In reaching its decision, the bankruptcy court first determined that APBLS should be considered a creditor of Logistics at the time Sperbeck withdrew money from Logistics in late 2000 and early 2001. The Massachusetts Uniform Fraudulent Transfer Act defines a "creditor" as "a person who has a claim." Id. § 2. A "claim" specifically includes "unliquidated" and "disputed" claims, id., and therefore APBLS's counterclaims, which it had brought in 1999, made it a "creditor" within the applicable definition. The court further determined that Sperbeck formed Arclogix after the lawsuit mediation had failed.

The bankruptcy court found that all of Logistics' funds and assets had been transferred, leaving no assets to satisfy APBLS's claim. The assets were transferred to Arclogix for the depreciated tax value or for nothing at all, without any effort at fair market valuation. Logistics' computer software and accounts receivable were apparently transferred over to Arclogix balance sheet for no consideration. The bankruptcy court further found on the evidence that Sperbeck had the intent to defraud Logistics' creditor, APBLS. It found that Sperbeck's explanation for forming Arclogix—some unnamed attorney suggested it so as to give stock to employees—was

"contrived, particularly in light of Sperbeck's admission that the APBLS claim was in his mind when he implemented his plans." In re Logistics Info. Sys., Inc., Adv. Pro. No. 04-1188, 2009 WL 722023, at *2. The court also noted that Sperbeck offered no evidence outside his testimony to corroborate his assertions. It found Arclogix's failure to pay for any of Logistics' intellectual property or contracts, its notice to Logistics' vendors and customers that "Arclogix" was merely a name change, and the equivalence between the financial sheets of Arclogix and Logistics to be strong evidence that Arclogix was the intended successor to Logistics.

In this appeal, the appellants essentially try to re-litigate the factual determinations already made by the bankruptcy court. They argue that the court's conclusions were clearly erroneous because Sperbeck did not consider APBLS to be a creditor at the time he caused Logistics to transfer money and property to him and to Arclogix. They also reassert that Arclogix was formed for legitimate reasons, such as to give employees stock and to make use of new and updated programming software—reasons rejected as uncorroborated and not credible by the bankruptcy judge.

The appellants further emphasize that since the Arclogix software is different from the Logistics software, Logistics' intellectual property was never transferred to Arclogix. However, the evidence showed that Arclogix continued to service and advertise Logistics' MayPayload and AuditLogic software. Likewise, Arclogix continued to serve Logistics customers pursuant to the License Agreements between Logistics and its clients, despite the fact that there was no formal assignment of contract rights. Notably, all of Arclogix's income derived from serving old Logistics customers. As to the appellants' contention that the Wellesley Bank Account was derived from legitimate funds, including personal savings, the bankruptcy court specifically

7

made a finding of fact that this was not a credible assertion. There was no evidence corroborating Sperbeck's testimony on this point.

As to the legal issue, of the eleven factors listed in Massachusetts General Laws chapter 109A, § 5(b), almost every one supports the conclusion that the transfers were fraudulent. The transfers of money and assets were made to an insider, Sperbeck. The transfers were concealed. Sperbeck told its vendors and customers that Logistics had merely changed its name. After the transfers, Logistics was insolvent, without any assets. The transfer of Logistics' assets (tangible property, intellectual property, and contracts) was not made in exchange for a value reasonably equivalent to the value of the assets. In fact, the only asset Arclogix paid for was the office equipment, and even then it only paid the tax-depreciated value, not the fair market value. Arclogix did not pay for Logistics' client contracts or its trademarked software.

There was substantial evidence before the bankruptcy court that the appellants' transfers were fraudulent. Its findings were not clearly erroneous, and they stand.

B.   Did the Bankruptcy Court Err in Excluding Evidence of APBLS's Settlement Offer?

At trial, the appellants attempted to offer into evidence a settlement offer made by APBLS during mediation of the APBLS-Logistics claims. APBLS had offered to settle the claims and counterclaims in the suit by a net payment to Logistics. According to the appellants, this cast APBLS in the role of a debtor of Logistics, not a creditor, and the evidence should have been admitted as it bore on Sperbeck's intent to defraud. It was admissible under Federal Rule of Evidence 408, they say, because it was not offered to prove the existence of APBLS's liability, but rather on the entirely separate issue of Sperbeck's state of mind.

The bankruptcy court, relying on the Massachusetts "mediation statute," Mass. Gen. Laws ch. 233, § 23C, excluded the evidence. That statute provides that "[a]ny communication

made in the course of and relating to the subject matter of any mediation and which is made in the presence of such mediator by any participant, mediator or other person shall be a confidential communication and not subject to disclosure in any judicial or administrative proceeding . . . ." Id.

The bankruptcy court's evidentiary rulings are reviewed for abuse of discretion. Williamson v. Busconi, 87 F.3d 602, 603 n.1 (1st Cir. 1996). If the court erred, it must then be determined whether the error was harmless or whether it adversely affected the objecting party's "substantial rights." Fed. R. Bankr. P. 9005, 9017 (incorporating Fed. R. Civ. P. 61; Fed. R. Evid. 103(a)); Lynch v. City of Boston, 180 F.3d 1, 15 (1st Cir. 1999). An error is harmless when the court "can say with fair assurance . . . that the judgment was not substantially swayed by the error." Lubanski v. Coleco Indus., Inc., 929 F.2d 42, 46 (1st Cir. 1991) (internal quotation omitted). Erroneous exclusion of testimony may be deemed harmless if there is considerable evidence supporting the judgment. Lynch, 180 F.3d at 17.

Federal Rule of Evidence 408(b) permits evidence of an offer to compromise so long as it is offered for a purpose not prohibited by Rule 408(a). Such prohibited purposes are impeachment and proof of "liability for, invalidity of, or amount of a claim that was disputed as to validity or amount . . . ." Fed. R. Evid. 408(a). Because Logistics' purpose in offering APBLS's settlement offer was not for a prohibited purpose, the offer would be admissible under Rule 408(b).

The question, then, is whether the Massachusetts statute trumps Rule 408. Federal Rule of Evidence 501 provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance

with State law." Here, the communication at issue, the settlement offer, was relevant only to whether the conveyances were fraudulent under the Massachusetts Uniform Transfer Act. Massachusetts law "supplies the rule of decision" as to the fraudulent conveyance claim. Because the mediation statute is fairly understood as creating an evidentiary privilege, the bankruptcy court did not err in excluding the settlement. See, e.g., Niagara Mohawk Power Corp. v. Megan-Racine Assocs., Inc. (In re Megan-Racine Assocs., Inc.), 189 B.R. 562, 569 (Bankr. N.D.N.Y. 1995) (applying state law privilege where state law provided the rule of decision); Whittaker v. Carmean (In re Carmean), 153 B.R. 985, 991 (Bankr. S.D. Ohio 1993) (applying Ohio law privilege to an action in bankruptcy court to recovery property under the Ohio Uniform Fraudulent Transfer Act); Taxel v. Equity Gen. Ins. Co. (In re Couch), 80 B.R. 512, 516 (S.D. Cal. 1987) (same).

Even if the bankruptcy court erroneously excluded the settlement offer, the error was harmless in light of all the evidence, particularly Sperbeck's own testimony that the "APBLS claim was in his mind when he implemented his plans." In re Logistics Info. Sys., Inc., Adv. Pro. No. 04-1188, 2009 WL 722023, at *2. "[J]udgment was not substantially swayed by the error." Lubanski, 929 F.2d at 46. The bankruptcy court's exclusion of the settlement offer was not reversible error.

    C.    Did the Bankruptcy Court Err in Finding Arclogix To Be the Successor to Logistics?

The appellants argue that the bankruptcy court erred in finding Arclogix to be Logistics' successor. The "determination whether a predecessor corporation continues to exist for purposes of successor liability is wholly fact specific." Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 256 (Mass. 2008). In determining whether there is successor liability, courts usually consider the following factors:

> whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; (2) there is a continuity of shareholders . . . ; (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

Id. at 255 (quoting Cargill, Inc. v. Beaver Coal & Oil Co., 676 N.E.2d 815, 818 (Mass. 1997)). The "mere continuation" theory of successor liability "envisions a reorganization transforming a single company from one corporate entity into another." Id. (quoting McCarthy v. Litton Indus., Inc., 570 N.E.2d 1008, 1012 (Mass. 1991)). "The purchasing corporation, in the words of one court, is merely a 'new hat' for the seller." McCarthy, 570 N.E.2d at 1012.

Here, Arclogix had the same employees, office equipment, location, and even phone number, so there certainly was continuation of the enterprise. And while Arclogix employees were given some stock, Sperbeck was the principal shareholder in both Arclogix and Logistics. Logistics dissolved as soon as legally and practically possible.

Importantly, Arclogix effected the uninterrupted continuation of Logistics' business operations. Arclogix provided the same software with the same function to the same set of clients. Its financial statements mirror those of Logistics. Arclogix did not begin operations until after January 1, 2001, but still reflected an accounts receivable of $200,201 as of December 31, 2000 and a computer software expense of $559,938—the same that Logistics' balance sheet had on December 31, 2000. Arclogix notified all its customers and vendors that Logistics had simply changed its name to Arclogix, and it has not sold any new products since its formation. The bankruptcy court's finding was well supported in the evidence.

D.  Did the Bankruptcy Court Err in Substantively Consolidating Logistics and Arclogix?

   *1. Bankruptcy Court Power to Substantively Consolidate Debtor and Non-Debtor*

Bankruptcy courts may substantively consolidate two or more related entities and thereby pool their assets. Substantive consolidation "treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities." Genesis Health Ventures, Inc. v. Stapelton (In re Genesis Health Ventures, Inc.), 402 F.3d 416, 423 (3d Cir. 2005). A bankruptcy court's authority to consolidate is not provided for in the Bankruptcy Code, but it has been deemed to derive from the bankruptcy court's general equitable powers as expressed in section 105 of the Code.[1] See, e.g., Eastgroup Props. v. S. Motel Ass'n, 935 F.2d 245, 248 (11th Cir. 1991); Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.), 860 F.2d 515, 518 n.1 (2d Cir. 1988).

Substantive consolidation of two or more debtors' estates is widely accepted. See, e.g., In re Owens Corning, 419 F.3d 195, 207 (3d Cir. 2005); Alexander v. Compton (In re Bonham), 229 F.3d 750, 764 (9th Cir. 2000); Reider v. Fed. Deposit Ins. Co. (In re Reider), 31 F.3d 1102, 1106-07 (11th Cir. 1994); Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.), 810 F.2d 270, 276 (D.C. Cir. 1987). Substantive consolidation of a non-debtor with a debtor, as here, is less common, but increasingly accepted. The trend toward greater court approval of substantive

---

[1]

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

consolidation "has its genesis in the increased judicial recognition of the widespread use of interrelated corporate structures . . . ." Eastgroup Props., 935 F.2d at 249 (quoting In re Murray Indus., Inc., 119 B.R. 820, 828-29 (M.D. Fla. 1990)). "Without the check of substantive consolidation, debtors could insulate money through transfers among inter-company shell corporations with impunity." In re Bonham, 229 F.3d at 764.

The First Circuit has approved substantive consolidation of multiple debtors, see, e.g., Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 12 (1st Cir. 1992) (stating that bankruptcy court has authority to order substantive consolidation), but has never ruled on substantive consolidation involving non-debtors. Several other circuits, however, have approved the substantive consolidation of debtor and non-debtor entities. See, e.g., In re Bonham, 229 F.3d at 763-65; Creditors Servs. Corp. v. Cooley (In re Creditors Servs. Corp.), 182 F.3d 916, 1996 WL 519296, at *1-2 (6th Cir. July 15, 1999) (unpublished decision); Soviero v. Franklin Nat'l Bank, 328 F.2d 446, 447-49 (2d Cir. 1964); see also In re Stayton SW Assisted Living, LLC, No. 09-cv-6082, 2009 WL 5173512, at *4-6 (D. Or. Dec. 22, 2009); Simon v. New Ctr. Hosp. (In re New Ctr. Hosp.), 187 B.R. 560, 567 (E.D. Mich. 1995). Furthermore, no circuit court has found that bankruptcy courts lack such authority. See In re Owens Corning, 419 F.3d at 208 ("No court has held that substantive consolidation is not authorized.").

Substantive consolidation involving a non-debtor was at least tacitly approved by the Supreme Court in a 1941 case. In Sampsell v. Imperial Paper and Color Corp., 313 U.S. 215 (1941), the Court affirmed a lower court order substantively consolidating a debtor corporation with a non-debtor corporation of which the debtor was the primary shareholder. The bankruptcy referee had concluded that the non-debtor corporation was "'nothing but a sham and a cloak' devised by [the debtor] 'for the purpose of preserving and conserving his assets . . . and that the

corporation was formed for the purpose of hindering, delaying and defrauding his creditors."' Id. at 217.

Some bankruptcy courts have questioned whether they have the authority to consolidate non-debtor entities. See, e.g., Helena Chem. Corp. v. Circle Land & Cattle Corp. (In re Circle Land), 213 B.R. 870, 876 (Bankr. D. Kan. 1997); In re DRW Prop. Co., 54 B.R. 489, 497 (Bankr. N.D. Tex. 1985). Nevertheless, the majority of bankruptcy courts have found non-debtor consolidation to be appropriate in some circumstances. See, e.g., Simon v. ASIMCO Techs., Inc. (In re Am. Camshaft Specialties, Inc.), 410 B.R. 765, 786 (Bankr. E.D. Mich. 2009) ("[T]he weight of the case law holds that § 105 can be used to order substantive consolidation, even of a non-debtor with a debtor."); Dominion Fin. Corp. v. Morfesis (In re Morfesis), 270 B.R. 28, 31 (Bankr. D.N.J. 2001) ("While the remedy of substantive consolidation is more widely used to consolidate debtor estates already in bankruptcy, its scope has been held to reach non-debtor entities, under the appropriate circumstances."); Walls v. Centurion Asset Mgmt., Inc. (In re Bolze), Adv. Pro. No. 09-3035, 2009 WL 2232802, at *3 (Bankr. E.D. Tenn. July 23, 2009) ("Bankruptcy courts have the authority to substantively consolidate assets of a debtor with those of a non-debtor corporation under 11 U.S.C. § 105(a) (2006), to be used sparingly and when equity demands.").

Within this circuit, bankruptcy courts have approved the application of substantive consolidation to non-debtors, often in cases in which the non-debtor is a subsidiary or alter ego of the debtor. See, e.g., Gray v. O'Neill Props. Group, L.P. (In re Dehon, Inc.), No. 02-41045, 2004 WL 2181669, at *3 (Bankr. D. Mass. Sept. 24, 2004) ("Large corporations, such as the Debtor, often use multi-tiered corporate structures, and substantive consolidation has been used

to reach the assets and liabilities of a non-debtor subsidiary corporation."); Murphy v. Stop & Go Shops, Inc. (In re Stop & Go of Am., Inc.), 49 B.R. 743, 745 (Bankr. D. Mass. 1985).

While such power should be used cautiously, the great weight of cases supports the authority of bankruptcy courts to order substantive consolidation of debtors and non-debtors.

        2.     *Substantive Consolidation of Logistics and Arclogix*

Though most courts agree on the theoretical foundations of substantive consolidation, they have not agreed on a uniform standard or test for determining when it is appropriate. The bankruptcy court in this case analyzed its applicability under two different standards and found that substantive consolidation was appropriate under either.

In this case, the bankruptcy court first looked at substantive consolidation under the test set out in Hemingway Transport, 954 F.2d at 12 n.15, and the similar test in Auto-Train, 810 F.2d at 276. Hemingway Transport, 954 F.2d at 12 n.15, is the only case in which the First Circuit has referred to the standard to be used for substantive consolidation. The court stated:

> Consolidation is permitted only if it is first established that the related debtors' assets and liabilities are so intertwined that it would be impossible, or financially prohibitive, to disentangle their affairs. The trustee may request consolidation to conserve for creditors the monies which otherwise would be expended in prolonged efforts to disentangle the related debtors' affairs. Nevertheless, the bankruptcy court must balance the potential benefits of consolidation against any potential harm to interested parties.

Id. The test is similar to that of Auto-Train, 810 F.2d at 276, and some bankruptcy courts within the First Circuit have applied the Auto-Train test to substantive consolidation determinations. See, e.g., Nickless v. Avnet (In re Century Elecs.), 310 B.R. 485, 489 (Bankr. D. Mass. 2004); Saccurato v. Shawmut Bank, N.A. (In re Mars Stores, Inc.), 150 B.R. 869, 879-80 (Bankr. D. Mass. 1993).

The Auto-Train test examines three factors, all of which must be met: (1) the movant must show a "substantial identity between the entities to be consolidated;" (2) the movant must also demonstrate that "consolidation is necessary to avoid some harm or to realize some benefit;" and (3) if a creditor will be prejudiced, the benefits of consolidation must heavily outweigh the harm. 810 F.2d at 276. As the above discussion of successor liability demonstrated, Arclogix and Logistics were essentially the same company; Arclogix was just a "new hat" for Logistics. Consolidation was necessary to avoid harm because, as the bankruptcy court discussed, unraveling the transfers would be nearly impossible. Finally, Arclogix itself had no creditors who could have been prejudiced by the consolidation.

The bankruptcy court then examined substantive consolidation under the standard for piercing the corporate veil. See, e.g., In re Vecco Constr. Indus., Inc., 4 B.R. 407, 412 (Bankr. E.D. Va. 1980) (applying a veil-piercing-like standard to substantive consolidation determination). Under Massachusetts law, piercing the corporate veil is appropriate when "there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities . . . ." Aoki v. Atto Corp. (In re Aoki), 323 B.R. 803, 812 (B.A.P. 1st Cir. 2005) (quoting My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 752 (Mass. 1968)). There are twelve factors courts use to help in this inquiry:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity, assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Id.

The bankruptcy court found that the activities of Logistics and Arclogix were intermingled, such that "[i]t would be extremely difficult and probably impossible to unravel the transfers made here, particularly since the contracts and software fraudulently usurped have 'morphed' several times over in the years since the tainted transactions." In re Logistics Info. Sys., Inc., Adv. Pro. No. 04-1188, 2009 WL 722023, at *5. Most of the twelve factors identified are present here. Sperbeck was the only shareholder of Logistics, the primary shareholder of Arclogix and the president of both. Arclogix and Logistics served the same clients under the same contracts with the same assets and employees in the same location. Logistics' financial activities appear on Arclogix financial statements months before Arclogix began its operations. Sperbeck siphoned off Logistics' assets, leaving it insolvent. And as the bankruptcy court found, Sperbeck used the companies to transact fraudulent conveyances.

Thus, substantive consolidation was warranted under both the Auto-Train and veil-piercing tests, and the bankruptcy court did not err in substantively consolidating Logistics and Arclogix.

## III.   Conclusion

The bankruptcy court's March 18, 2009 judgment for Braunstein and order granting substantive consolidation of Logistics and Arclogix are AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge